THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:07CR400 |
|---|---|---|
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER AND DECISION** |
| DEONTE SWEENEY, | ) ) | |
| Defendant. | ) ) | |

This matter comes before the Court on Motion by Defendant Deonte Sweeney ("Defendant") to Suppress Evidence. The Motion is based on what Defendant alleges was an unlawful stop and search of his vehicle. In this case, Defendant is charged with Possession of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and moves to suppress the evidence found in his vehicle - approximately 84 grams of crack cocaine, a digital scale and unused plastic baggies. Plaintiff United States of America ("the Government") timely filed a Response to the Motion to which Defendant filed a Reply Brief. A hearing was held regarding the Motion on November 20, 2007. At the hearing, the Government presented the testimony of the arresting Cleveland police officers. Defendant testified on his own behalf.

The Court has considered the Motion, Response, Reply, evidence, and arguments presented at the hearing and applicable law. For reasons that will be stated below, it is hereby determined that Defendant's Motion is DENIED.

**FACTS**

Cleveland Police Officers Weaver and Goins were in a zone patrol car in the area of Signet, Imperial, East 123rd and East 126th in the City of Cleveland on May 14, 2007. The area is a high complaint area regarding drugs and gang activity. The officers testified that they observed individuals in the area in question, around the corner of Imperial and East 123rd streets.[1] Officer Goins testified that he observed what appeared to be a drug transaction - one individual handing another a plastic baggie in exchange for cash. Although he did not immediately recognize Defendant as one of the individuals on the corner, he did see the man he later identified as the Defendant, enter the van in this case.

Officer Weaver testified that he saw three or four men standing in front of a parked vehicle, a green minivan, on Imperial Avenue. Their attention was focused on their hands, an action that signified to the officer, based on his experience, that they were engaged in drug activities. When the men saw the police car, two of the individuals dispersed immediately and quickly walked down East 123rd.[2] The other man got into the vehicle they had been standing in front of and pulled hurriedly away from the curb where he was parked. He did so directly in front of the police vehicle without signaling that he was entering oncoming traffic.

The police car followed the Defendant for a few blocks.[3] The officers called into dispatch the vehicle's license plate number, which returned as registered to the

---

[1] The officers disagree as to the exact location of the three individuals but both testified that they were in or around the immediate vicinity of the corner.
[2] Officer Goins agreed in cross-examination that the two men "took off and ran" when they noticed the police vehicle.
[3] The officers testified that they were in a known gang and drug area and they did not want to pull the vehicle over until they had some distance from the original location. This issue is addressed later in this Order.

Defendant. Officer Goins was familiar with the Defendant based on a prior drug arrest and another time when he was the victim of a car theft. He relayed that information to Officer Weaver. The officers pulled Defendant's vehicle over.

Officer Weaver approached the vehicle from the driver's side and asked Defendant for his license and proof of insurance. Defendant was visibly shaking as he handed Officer Weaver his license. Officer Goins approached the vehicle from the passenger's side and placed his face to the minivan's tinted back, side window to look into it for safety reasons.[4] The officer testified that he saw a Tanqueray bottle tucked into the netting in the back of the front passenger's seat. He informed Officer Weaver of this. Officer Weaver also testified that he saw the liquor bottle, albeit he stated that he noticed it behind the passenger's seat on the floor, leaning against the seat.

Officer Weaver asked Defendant if he had any guns, knives, needles or anything else in the car that could hurt the officer. Describing Defendant's demeanor, Officer Weaver testified that Defendant's shaking became obvious and he was sweating, stammering and stuttering. Defendant was asked to clasp his hands together in front of him.[5] The officers then conversed in the squad car. Upon returning to Defendant's vehicle, Officer Weaver opened the door and asked Defendant to come out of the vehicle. Officer Weaver noticed Defendant move his hands towards his waistband. Concerned that he may have a weapon, the officers attempted to remove Defendant from the vehicle. At that time, the Defendant appeared to reach back into the vehicle, which raised another

---

[4] Both officers testified that the area was known for drugs and gang violence. They also testified that most often weapons were used in drug transactions.

[5] Officer Weaver testified that the two officers returned to the vehicle and conversed. It was at that time that Officer Weaver states Officer Goins informed him about Defendant's prior drug arrest. Officer Goins testified that he informed Officer Weaver of this when he received the information from dispatch about who owned the minivan.

3

safety concern for the officers. At that point, Officer Weaver drew his firearm and placed it in Defendant's side as Defendant was put against the vehicle and told to place his hands on the car. Officer Weaver wrapped his arms around Defendant until Defendant was secured in handcuffs. Defendant was then patted down. Over $1,000 was found on his person.

The officers searched the vehicle and retrieved the liquor bottle.[6] Officer Weaver testified that it smelled like an alcoholic beverage. Defendant was given a ticket for the traffic citation and was arrested for the open container. The officers did an inventory search of the vehicle and discovered a black plastic bag in the glove box which contained a digital scale with crack cocaine residue, two plastic baggies containing approximately 84 grams of crack cocaine, and empty sandwich type baggies.

Defendant moves to suppress all the evidence obtained based on what he alleges was an illegal stop and search of his vehicle without probable cause or reasonable suspicion in violation of the Fourth Amendment. Defendant testified that he had not been standing on the corner with other men, but had been inside the convenient store (also located on that corner) purchasing a cigar and a t-shirt. He also disagrees with the officers account of what happened during the stop. Defendant alleges that when he was pulled over, Officer Weaver approached the vehicle to obtain his license, registration and insurance information. He then claims that when Officer Weaver returned to the vehicle, he ordered Defendant out of the vehicle with his gun drawn. Defendant claims he was handcuffed and that the officers did a pat down of his person at that time. When the officer located the large amount of money in Defendant's pocket, he showed the officer a

---

[6] Although some of the paperwork indicates that it was a Tanqueray gin bottle, the bottle actually contained and was marked as containing vodka.

4

flier about his music and said he was taking the money to pay for studio time to make a rap CD. Defendant testified that he was never shown any evidence that was confiscated from his vehicle.

## DISCUSSION

A. <u>Stop of the Vehicle</u>

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated." U.S. CONST. AMEND. IV. However, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. U.S.,* 364 U.S. 206, 222 (1960). Defendant challenges the stop and search of his vehicle as violating his rights under the Fourth Amendment. The Court will discuss the suppression argument under both *Terry v. Ohio,* 392 U.S. 1 (1968) and *Whren v. U.S.,* 517 U.S. 806 (1996).

    1. <u>*Terry v. Ohio*</u>

The Supreme Court has held that under *Terry v. Ohio*, searches are permissible based upon less than probable cause when the purpose of the detention is investigative, the length of time is reasonable, and the scope is limited to alleviating suspicion." *Hibel v. Sixth Judicial Dist. Court of Nevada,* 542 U.S. 177, 185 (2004). "*Terry* . . . permits a police officer briefly to detain a person or property for investigative purposes if the officer has reasonable suspicion, supported by articulable facts, that criminal activity is about to occur." *U.S. v. Davis,* 430 F.3d 345, 354 (6th Cir. 2005).

A reasonable suspicion is based on the totality of the circumstances and requires the Government to demonstrate that the police officers had "a particularized and

objective basis for suspecting the particular person . . . of criminal activity." *U.S. v. Cortez,* 449 U.S. 411, 417-18 (1981). This is done with evidence which is "less than proof of wrongdoing by a preponderance of the evidence." *U.S. v. Sokolow,* 490 U.S. 1, 7 (1989) (internal quotation marks omitted). It requires specific and articulable facts which are "more than [an] inchoate and unparticularized suspicion or hunch," but rather, "some minimal level of objective justification for making the stop." *Id.* (internal quotation marks omitted).

To show that the stop is reasonable under *Terry,* the Government must also show that the police officers used the "least intrusive [investigative] means reasonably available to dispel . . . [their] suspicion in a short period of time." *U.S. v. Bueno,* 21 F.3d 120, 125 (6th Cir. 1994). This concerns the "length of the investigative stop," not "whether the police had a less intrusive means to verify their suspicions *before* stopping" the individual. *Sokolow,* 490 U.S. at 11 (emphasis added). Additionally, "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer,* 460 U.S. 491, 200 (1983). Therefore, the question is "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *U.S. v. Davis,* 430 F.3d 345, 354 (6th Cir. 2005) (internal quotation omitted).

Under a *Terry* analysis, a court can also take into account whether the events take place in a high crime area. *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000). The court can also consider the suspects behavior and the officer's reactions to that behavior based on

6

their training and experience. *U.S. v. Bailey,* 302 F.3d 652, 659 (6th Cir. 2002); *U.S. v. Caruthers,* 458 F.3d 459, 466 (6th Cir.), *cert. denied,* 127 S. Ct. 752 (2006);

In this case, the Court finds that under *Terry*, there was a reasonable basis for the stop of Defendant's vehicle. Although the officers' testimony was inconsistent in the details of the occurrences between the individuals on the corner, the Court finds their testimony regarding the incident credible based on the officers' appearance and demeanor on the stand and their experience and training[7] in the field of law enforcement.

Officer Goins testified that he has been a police officer for approximately 10 years, 9 of which was spent in the Fourth District, where the events in this case gave rise. This is a high drug and complaint area. Officer Goins has personally made hundreds of arrest in that area and claims approximately 75% of those were arrests for crack cocaine.

Officer Weaver testified that he has been a police officer for approximately 8 years. He has been assigned to the Fourth District for his entire career. Officer Weaver testified about the extent of the drug activity and complaints regarding same in that district.

Both officers believed that there was drug activity afoot based on the actions of the individuals on the corner. Officer Goins testified that he saw what appeared to be the beginning of a drug transaction, an exchange of a plastic baggie for money. Officer Weaver testified that he noticed all the men were focused on their hands, an action that signified a drug transaction, based on his experience. Both officers believed that

---

[7] Officer Goins has been a police officer for 10 years - 9 of which were served in the district where this incident occurred. He testified that the area where this occurred is a high drug area, a high complaint area, and that he has made hundreds of arrests there, with up to 75% being for crack cocaine.
    Officer Weaver has been a police officer for 8 years - all of which were served in the district where this incident occurred. He also testified about the extent of the drug activity in the area.

Defendant was involved in that activity as he was the one seen leaving the corner and getting into the green minivan. Additionally, after the officers ran Defendant's license plate, they were aware that he had been involved in drug activities in the past. Therefore, even if the officers' had not pulled Defendant's vehicle over for a traffic violation, they did have reasonable, articulable suspicion that Defendant was committing a crime and had cause to stop the vehicle for a brief period of time to quell their suspicions based on the surrounding circumstances. However, the Court finds that the stop is more properly discussed under *Whren*.

    2. *Whren v. U.S.*

The Supreme Court has held that if the police have probable cause to believe that a motorist has committed a civil traffic violation, the temporary detention of the motorist is permissible under the Fourth Amendment regardless of whether the officers had ulterior motives. *Id.* In this case, the officers testified that Defendant's minivan was parked on the side of the road and that when the vehicle left the curb, it failed to signal. The Court credit's the testimony of the officers that indeed the Defendant failed to use a directional signal and did fail to yield as required by law. Additionally, Defendant did not dispute that he pulled away from the curb without signaling and Defendant was found in a Cleveland Municipal Court to be guilty beyond a reasonable doubt of the traffic violation.

The Court does not credit counsel's argument that the only reason Defendant was found guilty of the offense was because the judicial officer was tired or had had a long day. This Court gives credence to the municipal judge's ruling as having carefully considered the evidence before her before rendering a decision. To further evidence this

8

fact, the judge did not find Defendant guilty of the open container violation due to the prosecution's failure to introduce into evidence of the bottle of alcohol.

In this case, Defendant committed a traffic violation which was observed by the officers. Therefore, they had probable cause to temporarily detain the Defendant without violating the Fourth Amendment.

Although counsel argued that the traffic violation was not the reason for the stop and presented as evidence the length of time the officers waited after the offense had been committed before pulling Defendant's vehicle over, this argument also lacks merit. Initially it is noted that the fact that the officers may have had an ulterior motive for the stop is irrelevant under *Whren* since the Defendant did, in fact, commit a civil traffic violation. As to the length of time between when the officers observed the offense and when they pulled the Defendant over, both officers testified that the offense occurred in a high drug and gang area. The officers testified that they waited until they reached a safer area in order to pull the vehicle over.

Because the Court finds that the stop was proper, the next issue to consider is whether the search of the vehicle was proper. Clearly there are inconsistencies between the officers' testimony as it relates to the open container violation or the observation of the vodka bottle in Defendant's vehicle. Officer Goins testified that as he approached Defendant's vehicle on the passenger side, he looked inside the vehicle by placing his face against the glass of the back passenger window due to the tinting. Inside he noticed a bottle in the netting or map holder on the rear of the front passenger seat. Officer Goins testified that he immediately recognized the bottle as a Tanqueray bottle.

Officer Weaver testified that Officer Goins told him about the bottle when they first returned to the police car.  Officer Weaver, however, did not claim to have seen the bottle until after he returned to the vehicle.  He testified that when he returned to Defendant's vehicle, he observed, over Defendant's right shoulder, the bottle of alcohol sitting on the floor of the vehicle, tipped up against the passenger's seat.  Although there are some inconsistencies about the location of the bottle, the Court finds the officer's testimony credible, being sufficiently consistent to show that the bottle was observed inside the vehicle.

Defendant argued that the officers' story about the bottle was, in some way or form, contrived because of the inconsistencies.  However, the inconsistencies between the two officers' accounts demonstrate to the Court that there was not a conspiracy or fabrication because if there was some sort of fabrication, the testimony would have been more consistent than it was.  The Court does not believe, as Defendant alluded in his testimony, that these officers were in some way, shape or form, involved in some illegal effort to try and concoct a story to support the search in this particular matter.

Regardless of the discrepancy between the officers' testimony, Defendant, himself, at one point in the municipal proceedings, acknowledged that there was alcohol in his vehicle even though he disputed the ownership of it, claiming that a friend might have left it in his vehicle.  Defendant's Exhibit T, p. 33.

Once the bottle of alcohol was discovered, Defendant was arrested for having an open container in the vehicle.  The officers performed an inventory search of the vehicle when they took custody of it.  The Government provided the Court with a copy of the police standard procedures and protocol for searching a vehicle.  Therefore, the seizure of

10

the drugs and other contraband was proper as they were found during a valid inventory search of the vehicle and did not violate Defendant's rights under the Fourth Amendment.

The Court so indicates that it found Defendant's testimony to be wholly lacking in credibility.  Defendant's testimony that Officer Weaver approached the passenger side, that he drew his weapon, and that Officer Goins simply remained in the police car while that event was occurring is wholly incredible and inconsistent with any form of police practice or procedure that would be known to this court.  The Court also discredits, for the same reasons, Defendant's testimony that Officer Goins remained in the police car the entire time that the search was being conducted.  Finally, the Court lends no credence to Defendant's implication that all the drugs that were found in his vehicle were, in fact, planted by the officers in question.  There simply is no evidence to support this contention.

Finally, the Court finds nothing in Officer Goins' testimony that would indicate that it wasn't until he learned that Defendant was in fact the owner of the vehicle, that the decision to stop the vehicle was made.  Officer Goins testimony was very clear that he was unaware that the person on the corner who entered the vehicle was the Defendant. The person in the minivan did commit a traffic offense in front of the police officers. The officers ran the minivan's license plates through dispatch.  Although the officers did learn the identity of the owner of the vehicle, Officer Goins testified that he was not sure that Defendant was the one driving the vehicle until he personally saw the Defendant.

## CONCLUSION

11

Based on the above, the Court finds that under *Terry,* the officers had a reasonable suspicion, based on the totality of the circumstances, that Defendant had been engaged in some type of drug transaction.  The stop and seizure of Defendant's vehicle and person were the least intrusive investigative means reasonably able to dispel the officer's suspicion that Defendant was involved in some type of drug transaction.  The Court also finds under *Whren* that the stop of the vehicle was proper as Defendant had committed a civil traffic violation.  When the officers observed an open container of alcohol, Defendant was arrested and a proper inventory search of the vehicle occurred.  Because the drugs and contraband were found during that search, the officers did not violate Defendant's rights under the Fourth Amendment. Therefore, Defendant's Motion to Suppress is DENIED.

So ordered.

_____s/ Judge John R. Adams_____
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT